NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ORIGAMI OWL, LLC, an Arizona limited liability company; NINOX
ENTERPRISES, LLC, an Arizona limited liability company,
*Plaintiffs/Appellees*,

*v.*

THOMAS M. CONNELLY and JANE DOE CONNELLY, husband and
wife, *Defendants/Appellants*.

No. 1 CA-CV 14-0075
FILED 6-25-2015

Appeal from the Superior Court in Maricopa County
No. CV2013-007732
The Honorable Katherine M. Cooper, Judge

**APPEAL DISMISSED IN PART; AFFIRMED IN PART**

COUNSEL

Baugh-Dalton, L.L.C., Phoenix
By David Baugh, Jamie B. Palfai
*Counsel for Defendants/Appellants*

Davis Miles McGuire Gardner, PLLC, Tempe
By Scott F. Gibson, Marshall R. Hunt
*Counsel for Plaintiffs/Appellees*

_____

**MEMORANDUM DECISION**

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Jon W. Thompson joined.

_____

**P O R T L E Y**, Judge:

**¶1**         Thomas Connelly, Esq., appeals the injunction entered by the superior court prohibiting him from representing Christopher Ellis, a former officer of Origami Owl, L.L.C., in Ellis's lawsuit against Origami Owl.  He contends the court erred in determining that his prospective attorney-client relationship with Origami Owl violated Ethics Rule 1.18, Arizona Rules of Professional Conduct, in Arizona Rule of the Supreme Court 42.  He also appeals the trial court's order denying his request that Origami Owl post a preliminary injunction bond.  For the following reasons, we dismiss the appeal in part and affirm the court's ruling in part.

## FACTUAL AND PROCEDURAL BACKGROUND

**¶2**         Origami Owl designs and sells costume jewelry.  Christian Weems, the CEO, along with her minor daughter, B.W., own sixty-four percent of Origami Owl, through their company, Ninox Enterprises, L.L.C.  Origami Owl also has three other members.

**¶3**         Origami Owl originally hired Ellis as an independent contractor to help develop its business, but later made him the business's Chief Development Officer.  Ellis's compensation package included a five percent interest in Origami Owl that would vest over three years.

**¶4**         Business was good and, in 2012, the members of Origami Owl decided the business needed to have a written operating agreement, and, with Origami Owl's lawyer, began negotiating the terms of the agreement. Weems also met separately with Connelly, an attorney who had experience with multilevel marketing and network marketing companies, on March 12, 2012.  She wanted legal advice, and discussed with Connelly Origami Owl's operating agreement, expanding the business into direct marketing, her desire to protect B.W.'s interest in the business, especially by requiring a supermajority approval, and how she and B.W. could maintain control of the creative, artistic, and design aspects of the business.  After the meeting, Weems emailed Connelly a draft of Origami Owl's operating agreement.

**¶5** The next day, Weems called Connelly. During the conversation, they talked about the organization and ownership of Origami Owl, and Ellis's ownership interest. Weems also told Connelly about her agreement with Ellis, and how Ellis did not want to be listed in the operating agreement because he had problems with the IRS and was contemplating filing personal bankruptcy. Moreover, Weems told Connelly how she reserved Ellis's interest through Ninox. Connelly told Weems how to structure a supermajority vote in order to allow her and B.W. to control the company. Connelly also told Weems not to include Ellis's ownership interest in the operating agreement or give him any voting rights. Although Weems wanted to hire Connelly, he did not charge her a fee for the meeting, for reviewing the operating agreement or for the ninety-minute telephone conversation, and did not agree to represent her, Ninox or Origami Owl.

**¶6** About a year later, Origami Owl terminated Ellis. Ellis then retained Connelly, and Connelly sent a letter of representation to Origami Owl. Connelly also called Origami Owl's counsel and threatened to file suit against the business to recover Ellis's equity interest in the company. Origami Owl asserted that Connelly had an impermissible conflict of interest, and refused to communicate or negotiate any settlement with Connelly. Origami Owl and Ninox then filed this lawsuit seeking an injunction, a declaratory judgment, and damages for breach of fiduciary duty. At the same time, Origami Owl sought a preliminary injunction under Arizona Rule of Civil Procedure 65(a).

**¶7** The parties agreed to consolidate the preliminary injunction hearing and the trial on the merits. After the hearing, the court took the matter under advisement. Before the ruling, Ellis hired another attorney, and resolved all of his claims against Origami Owl. The court subsequently granted the injunction in a comprehensive ruling. Origami Owl filed a form of permanent injunction; Connelly objected, and requested an injunction bond. Later, after noting that Ellis had settled all of his claims against Origami Owl, the court denied the form of permanent injunction because the matter was moot, and denied Connelly's request for an injunction bond.

**¶8** Connelly appealed, and the court stayed the claims for declaratory judgment and damages for breach of fiduciary duty. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(5).[1]

---

[1] We cite to the current version of the statute unless otherwise noted.

**DISCUSSION**

I.     **Injunction**

¶9          Connelly contends that the trial court abused its discretion by issuing the injunction and finding that an attorney-client relationship "likely did arise as to [B.W.] individually."  We, however, do not need to address the merits of the argument because the issue is moot.

¶10         Unlike federal courts, our state courts do not have a "constitutional provision constraining it to consider only cases or controversies." *Fraternal Order of Police Lodge 2 v. Phoenix Emp. Relations Bd.,* 133 Ariz. 126, 127, 650 P.2d 428, 429 (1982) (internal quotation marks omitted).  Our supreme court, however, has consistently held that state courts will "refrain from considering moot or abstract questions."  *Id.* Therefore, we will not decide a question that is unrelated to an actual controversy or that is rendered moot by a change in circumstances.  *See id.; Contempo–Tempe Mobile Home Owners Ass'n v. Steinert,* 144 Ariz. 227, 229, 696 P.2d 1376, 1378 (App. 1985).

¶11         Here, the record shows, and both parties concede, that Ellis settled all of his claims against Origami Owl.  Although Connelly contends that the matter is not moot because it could affect the outcome of Origami Owl's action for damages on breach of a fiduciary duty, the court has not made a decision on that cause of action, and it is not a part of this appeal. *See Vigil v. Herman*, 102 Ariz. 31, 36-37, 424 P.2d 159, 164-65 (1967) (noting that an appellate court should not decide issues unless it is required to do so to dispose of the appeal under consideration); *see also Progressive Specialty Ins. Co. v. Farmers Ins. Co. of Ariz.,* 143 Ariz. 547, 548, 694 P.2d 835, 836 (App. 1985) ("It is not an appellate court's function to declare principles of law which cannot have any practical effect in settling the rights of litigants.").

¶12         We, however, can decide an issue of law despite its mootness if the matter is of considerable public importance or the principle involved is a continuing one.  *State v. Superior Court,* 104 Ariz. 440, 441, 454 P.2d 982, 983 (1969).  But we do not find that the circumstances of this case fall within either exception.  Although the issue involved in this case, an attorney pursuing a claim against a prospective client, is capable of repetition, we cannot say as a matter of law that it will evade review.  Further, given that Ellis has settled all of his claims against Origami Owl, the question involved does not rise to a sufficient level of "public importance" to be an exception to the mootness doctrine. *See Camerena v. Dep't of Pub. Welfare,* 106 Ariz. 30, 31, 470 P.2d 111, 112 (1970); *Cardoso v. Soldo,* 230 Ariz. 614, 617, ¶ 6, 277 P.3d

811, 814 (App. 2012) (noting that an appellate court generally declines to apply the "public importance" exception where an appellant's argument is grounded on events that occurred in the specific case). Therefore, we dismiss this part of the appeal as moot.

## II.     Preliminary Injunction Bond

¶13        Connelly also argues that the court erred by denying his motion for an injunction bond when the court issued an injunction after consolidating the preliminary injunction hearing with the hearing on the merits. We disagree.

¶14        "[W]e review de novo any questions involving interpretation or application of court rules[.]" *Haroutunian v. Valueoptions, Inc.*, 218 Ariz. 541, 549, ¶ 22, 189 P.3d 1114, 1122 (App. 2008). Arizona Rule of Civil Procedure 65(e) states:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the State or of an officer or agency thereof.

¶15        Here, Origami Owl requested a preliminary injunction, but the parties stipulated to consolidate the preliminary injunction hearing with the hearing on the merits. *See* Ariz. R. Civ. P. 65(a)(2) (authorizing the court to consolidate the trial on the merits with the hearing on the application for preliminary injunction). When the court issued its decision—after a hearing on the merits—it issued a final, permanent injunction. *See generally* 43A C.J.S. Injunctions § 15 (noting that a court issues a permanent injunction after deciding the merits of the petition). Therefore, Rule 65(e) does not apply to this case because the court never issued a preliminary injunction or temporary restraining order. *See generally* 43A C.J.S. Injunctions § 317 (noting that rules requiring a preliminary injunction bond do not apply "to final injunctions which settle conclusively the rights of the parties").

¶16        Equally unpersuasive is Connelly's argument that Origami Owl created a *de facto* temporary restraining order by refusing to negotiate with Connelly. Rule 65(e), however, applies when the court issues a

preliminary injunction or temporary restraining order; consequently, it does not apply when a party refuses to negotiate with the opposing party.

## CONCLUSION

¶17        For the foregoing reasons, we dismiss the appeal in part and affirm the court's ruling in part.



Ruth A. Willingham · Clerk of the Court
FILED: ama